

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-4-2005

# Uy v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2963

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Uy v. Atty Gen USA" (2005). *2005 Decisions.* Paper 454.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/454

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-2963

HELIANA UY,
Petitioner

v.

ALBERTO GONZALES,* Attorney General of the United States,
Respondent

PETITION FOR REVIEW OF A DECISION OF
THE BOARD OF IMMIGRATION APPEALS
Agency No. A79-324-792

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2005

Before: SLOVITER, BARRY, and SMITH, Circuit Judges

(Opinion Filed:  October 4, 2005)

OPINION

---

*Attorney General Alberto Gonzales has been substituted for former Attorney General John Ashcroft, the original respondent in this case, pursuant to Fed. R. App. P. 43(c).

BARRY, <u>Circuit Judge</u>

Heliana Uy's application to remain in the United States was denied by the Board of Immigration Appeals ("BIA"). Although she has returned to Indonesia, she seeks judicial review of the BIA's refusal to reconsider its decision. We will deny her petition for review.

**I.**

Because the parties are familiar with the facts, we mention only those relevant to our decision. Uy is a native and citizen of Indonesia, where she experienced firsthand some degree of the turmoil of Indonesia's two great political crises of the last half-century. She is a Catholic; most Indonesians are Muslim. She is of Chinese descent; most Indonesians are not.

In the 1960s, Indonesia was torn by a civil war that ultimately brought General Suharto to power. In 1967, the Indonesian military forced Uy's family to house and feed soldiers. A month later, the soldiers allegedly brutally beat her father, permanently blinding him. The next year, Suharto's government, with the aid of rioting mobs, forced many of the country's ethnic Chinese to relocate. The ten-year-old Uy and her family fled from Talang Padang to Telukbetung.

Thirty years later, Suharto's fall from power also saw mob violence. Once again, ethnic Chinese, considered by some native Indonesians to be economic oppressors, were frequent targets. In June 1996, five attackers assaulted Uy and her husband and ransacked

2

her beauty salon. In May 1998, a mob chanting "Allahu Akbar" (Arabic for "God is Great") assaulted Uy and her husband and ransacked her house. Uy's church was also a target; people would throw things at the attendants.

In March 2000, Uy came to the United States on a six-month Visitor for Pleasure visa. Her husband, a service manager for Suzuki Motors, remained behind in Indonesia, as did her daughter, a university student. Her son, Stefanus Setiawan, also came to the United States.[1] In June, 2001, Uy filed an application primarily for asylum and withholding of removal. In August 2001, the former Immigration and Naturalization Service[2] placed her into removal proceedings.

An Immigration Judge ("IJ") considered the merits of Uy's application at a hearing on September 23, 2002. At the close of the hearing, he issued an oral decision denying her claims for relief. Because Section 208 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(a)(2)(B), requires aliens filing for asylum to do so within one year of arrival in the United States, he held that Uy's application for asylum was untimely. That section, however, allows late applications when the alien demonstrates either "changed circumstances which materially affect the applicant's eligibility for asylum or

---

[1] The son's application for asylum and withholding of removal is the subject of a pending petition for review before this Court. Setiawan v. Attorney General, No. 04-2105 (3d Cir. argued July 12, 2005).

[2] As of March 1, 2003, the Immigration and Naturalization Service ceased to exist, and its functions were transferred to the Department of Homeland Security. See 6 U.S.C. § 271 (2002).

extraordinary circumstances relating to the delay." 8 U.S.C. § 1158(a)(2)(D). The IJ held that neither applied.

Turning to Uy's application for withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and for protection under the Convention Against Torture ("Convention"), see Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681, 2681-821 (1998); see also 8 C.F.R. § 1208.16(c), the IJ found that Uy had not shown that she had "ever been persecuted in the past or there's any chance at all of [her] being persecuted in the future." A202. See also SA72-73. Although he found some of Uy's testimony to be "very difficult to believe" and "implausible," he found her "generally . . . credible." SA71. Nonetheless, he believed himself bound by decisions of the BIA holding that damage resulting from civil unrest or civil disturbance is not persecution. The IJ found no evidence in the record that the Indonesian government had participated in harming Uy or that it would not prevent Uy from being harmed in the future.

Uy appealed to the BIA. She claimed that the IJ had mistakenly refused to grant her asylum, withholding of removal, and protection under the Convention. On February 18, 2004, the BIA denied her appeal in a one-paragraph per curiam opinion, adopting the IJ's decision as its own and specifically restating that her application for asylum was untimely. Uy did not file a petition for review with this Court, but instead filed a motion for reconsideration with the BIA, claiming that the BIA erred in affirming the IJ's refusal

to grant asylum or withholding of removal but not mentioning her claim under the Convention. The motion, made through new counsel, also included a claim of ineffective assistance of prior counsel. On June 16, 2004, the BIA denied the motion to reconsider in a second one-paragraph per curiam opinion. On July 13, 2004, Uy filed a timely petition for review with this Court.

## II.

We review the BIA's denial of a motion to reconsider for abuse of discretion. See INS v. Abudu, 485 U.S. 94, 109-10 (1988); Borges v. Gonzales, 402 F.3d 398, 404 (2005). We must uphold that decision unless it was "arbitrary, irrational, or contrary to law." Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004) (internal citation omitted).

Because Uy did not petition for review of the BIA's February 18, 2004 decision, we do not have jurisdiction to consider its merits. Stone v. INS, 514 U.S. 386, 405-06 (1995). Thus, to the extent that Uy now asks us to review the BIA's first decision, rather than its refusal to reconsider that decision, the issue is not properly before us, although, of course, it is necessary that we consider the record that was before the BIA when it rendered that decision. Similarly, we lack jurisdiction to review the BIA's determination that Uy's asylum application was untimely and that neither of the exceptions to the one-year bar applied. See 8 U.S.C. § 1158(a)(2)(B) and (D) and (a)(3). Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003). Uy, we note, does not press either her claim under the Convention or her claim of ineffective assistance of counsel.

5

## III.

All, then, that we have before us for review is Uy's claim that it was an abuse of discretion for the BIA to refuse to reconsider its rejection of her application for withholding of removal.

An alien may not be removed to a country if "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The applicant bears the burden of showing this risk of persecution. 8 U.S.C. §§ 1158(b)(1)(B), 1231(b)(3)(C). The applicant may either directly show a risk of future persecution, 8 C.F.R. § 208.16(b)(2), or show past persecution, which gives rise to a rebuttable presumption of future persecution. Id. at § 208.16(b)(1)(i). This presumption may be overcome by a showing that a "fundamental change in circumstances" negates the threat to the applicant's life or freedom. Id. at § 208.16(b)(1)(i)(A). The IJ found that Uy had not met her burden. The BIA adopted this conclusion and denied her motion for reconsideration. We see no abuse of discretion.

We begin with past persecution. In Lie v Ashcroft, 396 F.3d 530 (2005), we considered the claims of another Chinese Christian applicant from Indonesia who alleged a pattern of abuse similar to that suffered by Uy. There, the applicant, Lie, testified that she had been robbed and assaulted on multiple occasions by Muslim Indonesians who called her and her husband "Chinese pig[s]." Id. at 533-34.

6

We upheld the denial of Lie's applications for asylum and withholding of removal for reasons that are equally applicable here. First, the BIA "was entitled to rely on the evidence that, in Lie's particular case, the robberies were motivated by money." Id. at 535. Here, the IJ found, and the BIA concurred, that the attacks on Uy and her husband and the vandalism of her house and beauty salon were motivated by wealth, not race or religion, and were part of a larger problem of lawlessness.

Second, the threshold for violence sufficiently severe to constitute persecution is high, and clearly was not met here. In the words of the Lie Court, "two isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution." Id. at 536. The BIA surely did not err in finding that the incidents Uy described did not rise to the level of "persecution."

Lie also illustrates why there is no well-founded fear of future persecution here. A "well-founded fear" requires a showing either of the singling-out of an individual for persecution or a "pattern or practice" of persecution of a group similarly situated to the applicant. 8 C.F.R. § 208.13(b)(2). There is no evidence in the record that Uy would face an individualized risk of persecution in the future, and she does not seriously argue to the contrary.

Moreover, we do not agree with Uy that Chinese Christians in Indonesia are, in general, persecuted. Indeed, in Lie we rejected a nearly identical argument, finding, based

on the same State Department Country Report that the IJ here cited, that the situation for Chinese Christians has improved markedly since 1998, and that the violence against them, even then, was not the result of "governmental action or acquiescence." Lie, 396 F.3d at 537.

The BIA did not abuse its discretion in refusing to reconsider its determination that Uy had not demonstrated that her life or freedom would be threatened on account of her race or religion if she were returned to Indonesia. The petition for review will be denied.