**Jose BORGES, Petitioner**

**v.**

Alberto GONZALES,* Attorney General
of the United States, Respondent.

No. 04–1835.

United States Court of Appeals,
Third Circuit.

Argued Feb. 8, 2005.

March 30, 2005.

---

* Attorney General Alberto Gonzales has been substituted for former Attorney General John Ashcroft, the original respondent in this case, pursuant to Fed. R.App. P. 43(c).

Paul O'Dwyer, (Argued), New York, NY, for Petitioner.

Hillel R. Smith, (Argued), Anthony W. Norwood, Linda S. Wernery, William C. Peachey, United States Department of Justice, Office of Immigration Litigation, Ben Franklin Station, Washington, DC, for Respondent.

Before BARRY, FUENTES, and BECKER, Circuit Judges.

BARRY, Circuit Judge.

A motion to reopen a removal order issued *in absentia* must be filed within 180 days of the order. The primary issue before us, an issue of first impression, is whether the 180–day time limitation is mandatory and jurisdictional, or whether it is analogous to a statute of limitations and therefore can be equitably tolled. If it is the latter, we must decide whether fraud constitutes a basis for equitable tolling.

We hold that the 180–day time limitation can be equitably tolled, and can be tolled for fraud. As such, we will remand this case to the Board of Immigration Appeals ("BIA") for it to determine whether fraud was, in fact, perpetrated on petitioner by his legal representatives and, if so, whether the time limitation was sufficiently tolled so as to render the motion to reopen timely.

## I.

Jose Borges entered the United States on February 12, 1996 with a B–2 tourist visa. The then-Immigration and Naturalization Service ("INS")[1] commenced removal proceedings in August of 1997, alleging that he was an illegal overstay. Borges hired an immigration services company, Entra America ("Entra"), in January of 1998 to provide him with representation. What he was provided with, he alleges, was representation that amounted to fraud.

### A. *Entra and Alfred Placeres, Esq.*

Adela Ivan was the owner of Entra. She told Borges that she was a paralegal, but that Borges would be represented by one of Entra's immigration attorneys, Alfred Placeres, Esq. She also told him that Placeres would file a motion seeking a change of venue from New Jersey, where the removal proceedings were pending, to New York, where Borges lived, and that Placeres would represent Borges on an adjustment of status petition based on his then-pending marriage to Jolie LaMarca, a United States citizen.

On January 20, 1998, a change of venue motion which, Placeres tells us, "we" prepared, A200, was filed by Placeres. One week later, on January 27, Borges appeared at the Immigration Court in Newark, New Jersey. No attorney accompanied him. The Immigration Judge ("IJ") denied the change of venue motion and told Borges that if he did not return on February 3, 1998, he would be deported. Borges contacted Ivan, and she allegedly told him, supposedly at Placeres's behest: (1) that Placeres would not appear in court; (2) that if Borges went to court without an attorney, he would be deported; and (3) that because Borges had a pending application for adjustment of status, he could not be deported. Borges did not attend the proceedings on February 3, 1998, and the IJ ordered him removed from the United States *in absentia*.

In the meantime, on January 29, 1998, Borges married Ms. LaMarca. One month later, an Immediate Relative Petition (Form I–130) and an Adjustment of Status Petition (Form I–485) were filed—again, by Placeres. The documents were not only erroneously filed with the INS in New York, and not with the Immigration Court in New Jersey,[2] but erroneously indicated that Borges had never been the subject of removal proceedings. Unaware of the Immigration Court's orders, the INS in New York issued Borges an employment authorization based on the pending petitions, and an adjustment of status interview, which was scheduled for February 26, 2000. Given those facts, Borges assumed that the *in absentia* order had been vacated.

---

**1.** The INS is now known as the Bureau of Citizenship and Immigration Services, and operates within the Department of Homeland Security ("DHS"). 6 U.S.C. § 271 (2002); *see also Ambartsoumian v. Ashcroft*, 388 F.3d 85, app. at 95 n.6 (3d Cir.2004).

**2.** Under 8 C.F.R. § 245.2(a)(1) (1965) (amended 2002), "[a]fter an alien ... is in deportation or removal proceedings, his or her application for adjustment of status ... shall be made and considered only in those proceedings."

## B. First Motion to Reopen

In April of 1998, Borges received a letter from the INS telling him to report to the Hemisphere Center in Newark for deportation to Venezuela. Borges went to the Entra office and showed the letter to Ivan, who told him that Placeres had "taken care of" the *in absentia* order of removal by filing the adjustment of status petition, and reassured him that Placeres would file a motion to reopen and formally vacate the *in absentia* order.

On April 25, 1998, a timely "Motion to Reopen and Reconsider" was filed with the Immigration Court. It sought to vacate the *in absentia* order solely on the ground that the motion for a change of venue had been wrongly denied; it never mentioned the pending adjustment of status petition or gave any reason for Borges's failure to appear on February 3. The IJ denied the motion and served a copy of the decision on Placeres. Borges, who was not served, believed the motion had been granted.

During the period of his representation, it does not appear that Placeres ever spoke to Borges, much less met with him.

## C. Jamal Jbara, Esq.

Borges and his wife attended the adjustment of status interview in New York on February 2 or 3, 2000. They were represented by Jamal Jbara, Esq., another attorney working out of Entra. Jbara told Borges not to mention that an order of removal had issued. Borges, who believed the order had been vacated anyway, complied with that instruction. The I–130 and I–485 Petitions were granted, and Borges was approved for permanent residence.

In April 2000, Borges planned to travel to Venezuela to visit his mother, who was ill. He contacted Jbara to make sure that he would be able to re-enter the United States because he had not yet received his green card. Jbara told Borges, apparently for the first time, that the order of removal had not been vacated.

On May 10, 2000, Borges and Jbara again met with the INS officer who had conducted the adjustment of status interview. The officer voided the permanent residence stamp he had earlier placed on Borges's passport, replaced it with a stamp that said "pending Sec. 245," [3] and said he was transferring the case to New Jersey. The INS never commenced formal proceedings to rescind the approval of adjustment of status.

Also on or about May 10, 2000, Jbara agreed to file a motion with the Immigration Court to reopen the removal proceedings. He did not do so. Rather, he simply submitted a proposed joint motion to reopen to the Office of the District Counsel.[4] From May of 2000 until the summer of 2002, when he retained a new attorney, Borges regularly called Jbara to ascertain the status of the motion to reopen, and Jbara consistently led him to believe that the motion was still under consideration by the IJ.

## D. Second Motion to Reopen [5]

On January 27, 2003, Borges, represented by present counsel, Paul O'Dwyer,

---

3. This indicates that Borges had a petition for adjustment of status pending under section 245 of the Immigration and Naturalization Act. *See* 8 U.S.C. § 1255 (1952) (amended 2003).

4. This Office represented the INS in proceedings before the Immigration Court.

5. Typically, an alien can only submit one motion to reopen. *See* 8 U.S.C. § 1229a(c)(6) (1952)(amended 2000). When an order of removal is issued *in absentia,* however, the regulations are more lenient and it appears that multiple motions to reopen may be filed by the alien. *See Saakian v. INS,* 252 F.3d 21, 25 (1st Cir.2001); 8 C.F.R.

Esq., filed another motion to reopen with the Immigration Court. The motion alleged that Ivan, not Placeres, had performed all of the legal work during the critical months that Placeres was supposedly representing Borges, and that Borges had been defrauded by Placeres and Ivan into believing that a licensed and experienced attorney was representing him. According to Borges, those fraudulent representations led him to believe that he had nothing to worry about and kept him from discovering how serious his situation was and that, in fact, he remained under an *in absentia* order of removal. Indeed, he continued, the order of removal would not have been entered had it not been misrepresented to him that if he went to court, he would be deported. He argued that the 180–day period within which to file a motion to reopen the *in absentia* removal order should, therefore, be tolled until September of 2002, when he learned of the fraud. He also argued that the ineffective assistance of Placeres—and Ivan—constituted an exceptional circumstance excusing his failure to appear at his February 1998 removal hearing.

On March 10, 2003, the Immigration Court denied Borges's motion to reopen because it was untimely and because he had not complied with the three-step procedure under *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988)[6] for raising a claim of ineffective assistance of counsel. In April of 2003, Borges filed a timely motion to reconsider, arguing that he had in fact complied with the *Lozada* requirements.[7] The IJ denied the motion, finding it, too, untimely and finding that there was no reason to disturb the finding of noncompliance with *Lozada*. Borges appealed both decisions to the BIA.

On February 18, 2004, Borges was apprehended by officials from the DHS and was taken to a detention center in Jamaica, New York. On March 1, 2004, the BIA dismissed his appeal. The BIA determined, as relevant here, that an ineffective assistance of counsel claim does not qualify as an exception to the 180–day requirement for filing a motion to reopen, an argument Borges had not made, and determined that Borges had failed in some

---

§ 1003.23(b)(4)(iii)(D) (1987) (amended 2003). Because there is nothing in the record that explains why the IJ and the BIA permitted this second motion to reopen, we presume it is because of this context-driven leniency.

6. *Lozada* requires that:

A motion based upon a claim of ineffective assistance of counsel should be supported by an affidavit of the allegedly aggrieved respondent attesting to the relevant facts.... [T]hat affidavit should include a statement that sets forth in detail the agreement that was entered into with former counsel with respect to the actions to be taken on appeal and what counsel did or did not represent to the respondent in this regard. Furthermore, ... former counsel must be informed of the allegations and allowed the opportunity to respond. Any subsequent response from counsel, or report of counsel's failure or refusal to re-

spond, should be submitted with the motion. Finally, if it is asserted that prior counsel's handling of the case involved a violation of ethical or legal responsibilities, the motion should reflect whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not.

*Matter of Lozada*, 19 I. & N. Dec. 637, 638 (BIA 1988).

7. The IJ was advised that Borges had executed an affidavit reciting the agreement he had with his former counsel, had filed a complaint alleging the same facts to the Disciplinary Committee of the New York State Supreme Court, Appellate Division, First Department, and had served the complaint on former counsel. On February 21, 2003, O'Dwyer advised the IJ that an investigation had been instituted by the Disciplinary Committee, and provided the docket numbers the Appellate Division had assigned.

unspecified way to comply, as an initial matter, with *Lozada* and that this "fundamental defect" could not be remedied by his "subsequent" compliance. The BIA did not address Borges's argument that the 180–day requirement should be equitably tolled because of fraud. Finally, the BIA concluded, based on the competing affidavits of Borges and Placeres, that Placeres's denial that he told Ivan to tell Borges not to appear at the February 3 removal hearing had the "ring of truth" and, thus, that Borges had not established the prejudice component of his ineffective assistance of counsel claim. A1–2. Borges timely appealed to this Court, and on April 22, 2004, we issued a stay of removal pending appeal.[8]

## II.

■ We have jurisdiction under 8 U.S.C. § 1252(a) (1952) (amended 1996). We review the denial of a motion to reopen under an abuse of discretion standard. *Shardar v. Ashcroft,* 382 F.3d 318, 324 (3d Cir.2004). The denial of a motion to reconsider is also reviewed for abuse of discretion. *See INS v. Abudu,* 485 U.S. 94, 109–10, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988). We will disturb the BIA's denial of a motion to reopen or to reconsider only if it was "arbitrary, irrational, or contrary to law." *Guo v. Ashcroft,* 386 F.3d 556, 562 (3d Cir.2004) (internal citation omitted). In ruling on questions of law, we review the BIA's legal conclusions *de novo. Smriko v. Ashcroft,* 387 F.3d 279, 282 (3d Cir.2004). We review factual determinations under a "substantial evidence" standard, which requires us to treat findings of fact as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Ambartsoumian v. Ashcroft,* 388 F.3d 85, 89 (3d Cir.2004).

## III.

If an alien or his counsel of record has been provided with written notice of a removal proceeding, and the alien does not attend, he "shall be ordered removed *in absentia* if the [DHS] establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable[.]" 8 U.S.C. § 1229a(b)(5)(A) (1952) (amended 2000). The removal order may be rescinded only if the alien (1) files a motion to reopen within 180 days of the issuance of the removal order, and (2) demonstrates that his failure to appear was due to "exceptional circumstances." *Id.* at (b)(5)(C)(i); *see also Bejar v. Ashcroft,* 324 F.3d 127, 131 (3d Cir.2003).[9] There is no indication in the statute that the 180–day time limitation is jurisdictional. The statute does explain that "exceptional circumstances" are those "circumstances (such as serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien." 8 U.S.C. § 1229a(e)(1).

### A. *Equitable Tolling*

■ Borges concedes, as he must, that his 2003 motion to reopen was well outside of the 180–day window for seeking rescission of his February 3, 1998 *in absentia* order of removal, and he has never argued

---

8. Borges later filed a petition for a Writ of Habeas Corpus in the Southern District of New York, which was denied. He has also filed a civil lawsuit against Placeres, Jbara, Ivan, and Entra. We have no information regarding the status of that action.

9. If the alien demonstrates that he did not receive notice of the removal proceeding, the motion to reopen may be "filed at any time." 8 U.S.C. § 1229a(b)(5)(C)(ii). There is no contention by Borges that he was not provided with notice of the February 3 proceeding.

to the contrary. Respondent, however, has continually misconstrued what Borges has consistently argued is the basis for equitably tolling this 180–day period.

Borges has always argued, and argues now, that the 180–day period should be equitably tolled because Ivan and Placeres defrauded him by leading him to believe that Placeres was doing all of his legal work, by making fraudulent representations about the status of his case, and by telling him, among other things, that if he went to the Immigration Court for his February 3 hearing, he would be deported. Were it not for this fraud, he argues, he would have appeared at his removal proceedings and an *in absentia* order of removal would not have issued; indeed, given that he was eligible for adjustment of status, he had no reason *not* to appear. Borges also argues that he did not discover the fraud until September, 2002 and so, if the 180–day period were equitably tolled, the motion to reopen that was filed on January 27, 2003 would be timely.

Borges has never argued, and does not now argue, that ineffective assistance of counsel can or should constitute an "exception" to the 180–day time limit, but only that, if and when the 180–day period is equitably tolled, ineffective assistance can constitute the requisite extraordinary circumstance excusing a failure to appear. The BIA, however, dismissed his motion to reopen in part because it misunderstood this argument. Respondent suffers from a similar misunderstanding, as evidenced by his repeated citation to our decision in *Bejar*, which held that "alleged ineffective assistance of counsel is not an exception to the 180–day regulatory time limit." *Bejar*, 324 F.3d at 131 (citing *In re Lei*, 22 I. & N. Dec. 113 (BIA 1998)).

Correcting the mischaracterization of Borges's argument only gets us so far, for we must still decide whether the 180–day period for reopening an *in absentia* order of removal is subject to equitable tolling. The determinative factor is whether that time period is jurisdictional or whether it is analogous to a statute of limitations. If it is the former, it cannot be equitably tolled; if it is the latter, it can be.

Several of our sister courts of appeals have weighed in on the issue now before us. The Ninth Circuit has decided two cases very similar, on their facts, to this one. In *Lopez v. INS*, the Court granted the petition for review, finding that "the statute of limitations to reopen an order of deportation is equitably tolled where the alien's late petition is the result of the deceptive actions by a notary posing as an attorney" for the "apparent law office" Lopez had retained. 184 F.3d 1097, 1098–1100 (9th Cir.1999). The notary's actions, including telling Lopez that he need not attend his deportation hearing, resulted in an *in absentia* order of removal being entered. *See id.* at 1100–01. One year later, the Court granted similar relief to an alien who was "defrauded by an individual purporting to provide legal representation" who "took Varela's money" but did not file a motion to reopen or an application for adjustment of status until it was too late to do so. *Varela v. INS*, 204 F.3d 1237, 1240 (9th Cir.2000). More recently, the Court held that "[w]here the ineffective performance was that of an actual attorney and the attorney engaged in fraudulent activity causing an essential action in her client's case to be undertaken ineffectively, out of time, or not at all, equitable tolling is available." *Iturribarria v. INS*, 321 F.3d 889, 898 (9th Cir.2003); *see also Rodriguez–Lariz v. INS*, 282 F.3d 1218, 1224–25 (9th Cir.2002).

In both *Lopez* and *Varela*, the Court concluded that the relevant time period for reopening an order of removal was analogous to a statute of limitations, and then

relied on what *Lopez* describes as the "old chancery rule" that "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered[.]" *Lopez,* 184 F.3d at 1100 (internal citation omitted). Based on the fact that "[t]his equitable doctrine is read into *every* federal statute of limitation," *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946) (emphasis in original), tolling was deemed appropriate under the circumstances of both cases. *See Lopez,* 184 F.3d at 1100; *Varela,* 204 F.3d at 1240.

The First, Second, Fourth, and Sixth Circuits have more generally considered applying, or have applied, equitable tolling to motions to reopen. *See, e.g., Jobe v. INS,* 238 F.3d 96, 100–01 (1st Cir.2001) (considering, as an en banc court, the equitable tolling argument but dismissing the petition for review on the ground that, even if tolling were available, petitioner had not exercised due diligence); *Iavorski v. INS,* 232 F.3d 124, 129, 135 (2d Cir. 2000) (concluding that there can be tolling because there is "no evidence that Congress intended to enact a jurisdictional bar to untimely motions to reopen," but finding that petitioner had not exercised due diligence); *Akwada v. Ashcroft,* 113 Fed. Appx. 532 (4th Cir.2004), 2004 U.S.App. Lexis 23526, 14–16 (taking the same approach as taken by the *Jobe* Court); *Scorteanu v. INS,* 339 F.3d 407, 413 (6th Cir. 2003) (same).

The Eleventh Circuit, on the other hand, in one of the earlier cases in this area, held that the 180–day time period is jurisdictional, and refused to find an "exception" to the 180–day period based on ineffective

assistance of counsel. *Anin v. Reno,* 188 F.3d 1273, 1278–79 (11th Cir.1999). This is essentially what we held in *Bejar.* Here, however, we are dealing with *tolling* to permit reopening after 180 days based on allegations of fraud, not an exception on the ground of ineffective assistance to the 180–day time period excusing a failure to appear.[10]

Therefore, *Anin* does not impact our analysis.

We hold that the 180–day time limitation is more appropriately considered as analogous to a statute of limitations and, thus, subject to equitable tolling. *Cf. Island Insteel Sys., Inc. v. Waters,* 296 F.3d 200, 216 (3d Cir.2002) (internal citations omitted) (explaining that statutes of limitations serve the purpose of preventing litigation of stale claims, putting defendants on notice, and preventing plaintiffs from "sleeping on their rights."). We find it instructive, as we have before, that there is no reference to jurisdiction in the statute or in the legislative history. *See, e.g., Miller v. New Jersey Dep't of Corrections,* 145 F.3d 616, 618 (3d Cir.1998). Given this silence, we see no "good reason to believe that Congress did *not* want the equitable tolling doctrine to apply[.]" *United States v. Brockamp,* 519 U.S. 347, 350, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997) (emphasis in original). Furthermore, we, too, have long accepted the "old chancery rule" for tolling on the ground of fraud that *Lopez* recites, *see, e.g., Reuther v. Trs. of Trucking Employees,* 575 F.2d 1074, 1078–79 (3d Cir. 1978), and follow the Ninth Circuit's lead in applying it in the context seen here.

▮ Concluding, as we do, that tolling may be appropriate where there is fraud is not the same, however, as concluding that

---

**10.** *Anin* appears to have conflated these two requirements. *See id.* at 1278 (remarking that there is no "exception to the INA's 180 day filing deadline for exceptional circumstances to reopen a deportation order.").

fraud has been shown. A finding of fraud is a factual determination to be made by the BIA in the first instance. *Cf. Abdille v. Ashcroft,* 242 F.3d 477, 489–90 (3d Cir. 2001). Although "fraud" is not defined in the Act, the BIA has acknowledged, and we have found, that the term " 'should be used in the commonly accepted legal sense, that is, as consisting of false representations of a material fact made with knowledge of [their] falsity and with intent to deceive the other party. The representation must be believed and acted upon by the party deceived to his disadvantage.' " *Valansi v. Ashcroft,* 278 F.3d 203, 209 (3d Cir.2002) (quoting *Matter of GG,* 7 I. & N. Dec. 161, 164 (BIA 1956)). This determination will be for the BIA on remand. We note, in this connection, that we have granted Borges' motion to supplement the record with what he describes as newly-discovered evidence of fraud—including altered documents—which, on remand, the BIA should consider together with the record itself.

■ Parenthetically, we reject, as a matter of law, respondent's argument that even if the 180–day time limitation can be equitably tolled, and even if fraud is shown, Borges is ineligible for relief because he did not exercise due diligence. *See Robinson v. Johnson,* 313 F.3d 128, 142 (3d Cir.2002) (explaining that a petitioner must "exercise reasonable diligence in investigating and bringing the claim.") (quoting *Miller,* 145 F.3d at 618–19). The record permits no conclusion other than that Borges diligently attempted, over the course of five years, to have his immigration status resolved. For every one of the "red flags" that respondent argues Borges ignored or unreasonably overlooked, there was a corresponding red herring offered up by Ivan and Placeres, and later by Jbara and even the INS, to prevent Borges from discovering the mishandling of his case any earlier than he did. For example, although Borges had been ordered removed, immediately thereafter he was granted employment authorization and an interview with the INS on his adjustment of status petition. Then, when Borges received the order to report for deportation, Ivan reassured him that Placeres had "taken care of" everything by filing that petition. And when he was told that he could not re-enter the country if he left to visit his sick mother, Jbara reassured him that the situation would be resolved through the filing of a motion to reopen, which he consistently led Borges to believe was pending, although it was not.

In sum, on remand, the BIA is to determine whether fraud was perpetrated on Borges by Placeres and/or Ivan, causing the *in absentia* order of removal to issue. If so, the 180–day period for filing a motion to reopen should be equitably tolled.

### B. *"Exceptional Circumstances" and Ineffective Assistance of Counsel*

Borges has not argued that he did not receive notice of his removal hearing. Assuming, therefore, that by virtue of tolling his motion to reopen is deemed timely filed, he must also demonstrate that his failure to appear is excused by "exceptional circumstances" before the removal order can be rescinded. *This* is where Borges raises his ineffective assistance of counsel argument, claiming that ineffectiveness constituted the "exceptional circumstance" that caused him to miss the February 3, 1998 hearing at which he was ordered removed *in absentia.*[11] Respondent con-

---

11. As noted earlier, "exceptional circumstances" include "circumstances (such as serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling cir-

cedes that ineffective assistance of counsel may support a motion to reopen based on exceptional circumstances. Resp. Br. at 27.

 Respondent is correct in so conceding. "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings," *Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993), a right that must be strictly protected because deportation "visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom." *Bridges v. Wixon,* 326 U.S. 135, 154, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945). Furthermore, aliens have a statutory right to counsel, *see* 8 U.S.C. § 1362 (1952) (amended 1996), and a constitutional right to counsel based on the Fifth Amendment's guarantee of due process of law. *Ponce–Leiva v. Ashcroft,* 331 F.3d 369, 374 (3d Cir.2003). Implicit in the right to counsel is the requirement that the assistance rendered not be ineffective. "Ineffective assistance of counsel exists where, as a result of counsel's actions (or lack thereof), 'the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.'" *Saakian v. INS,* 252 F.3d 21, 25 (1st Cir. 2001) (quoting *Bernal–Vallejo v. INS,* 195 F.3d 56, 63 (1st Cir.1999)).

 Largely in light of the above, the First, Sixth, and Ninth Circuits have held ineffective assistance of counsel to be an "exceptional circumstance." *See, e.g., Asaba v. Ashcroft,* 377 F.3d 9, 11 n. 4 (1st Cir.2004); *Saakian,* 252 F.3d at 24–27; *Denko v. INS,* 351 F.3d 717, 723–25 (6th Cir.2003); *Reyes v. Ashcroft,* 348 F.3d 1126, 1129 (9th Cir.2003).[12] While we certainly see no reason not to join them, it is not necessary to do so at this time; indeed, we wonder why the parties have gone to such lengths to argue that ineffective assistance of counsel has, or has not, been shown. After all, to have gotten to this point, Borges would have had to demonstrate to the BIA that he was defrauded and, thus, that by virtue of equitable tolling his motion to reopen was timely filed. But if ineffective assistance of counsel can be an extraordinary circumstance excusing a failure to appear, and there is no suggestion that it cannot, a finding by the BIA that fraud was visited on Borges in the manner alleged here is surely an extraordinary circumstance in and of itself and, by definition, "ineffective assistance." And, of course, if Borges was unable to demonstrate fraud, there would be no equitable tolling and, therefore, no reason or, indeed, jurisdiction to address ineffective assistance.[13] Fraud, not ineffective assistance, is the crucial issue here.

## IV.

For the forgoing reasons, we will grant the petition for review and remand to the

---

cumstances) beyond the control of the alien." 8 U.S.C. § 1229a(e)(1).

**12.** *In re Grijalva–Barrera,* relied upon by the *Saakian* Court, is remarkably similar to the case before us. *See* 21 I. & N. Dec. 472 (BIA 1996). In *Grijalva–Barrera,* the alien's attorney called him and told him he did not have to attend a hearing before the Immigration Court, leaving the alien to find out only later that he had been deported *in absentia. Id.* at 473. The BIA held that the deportation proceedings could be reopened on the ground of

ineffective assistance of counsel because the alien "would have appeared [at the removal proceedings] but for the misrepresentations by his former counsel." *Id.* at 473–74.

**13.** Because we find it unnecessary under the facts of this case to reach the issue of ineffective assistance, we also find it unnecessary to discuss the procedural requirements of *Lozada.* We observe, however, that contrary to what was found by the INS and the BIA, Borges had complied with the requirements and respondent has conceded that fact.

BIA for a determination of whether fraud was committed. As noted above, we have granted Borges's motion to supplement the record with newly discovered evidence supporting his allegations of fraud. We instruct the BIA to consider this evidence in making its findings of fact on the issue of fraud. If the BIA finds fraud and finds that, by virtue of equitable tolling, the motion to reopen was timely filed, it is instructed to vacate the *in absentia* order of removal so that Borges can apply for adjustment of status.

This panel of the Court will retain jurisdiction over any future appeals relating to this matter. *Cf. Chang v. United States,* 327 F.3d 911, 930 (9th Cir.2003). The stay of removal previously entered by us will be continued. Finally, Borges has been detained since February 18, 2004. If an application for his release pending the proceedings on remand is filed, we anticipate that the BIA will look favorably on that application.