

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-1-2006

# Lin v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3571

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Lin v. Atty Gen USA" (2006). *2006 Decisions*. Paper 976.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/976

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-3571

GUAN YU LIN,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

PETITION FOR REVIEW OF A DECISION OF
THE BOARD OF IMMIGRATION APPEALS
Agency No. A73-534-004
Immigration Judge: Honorable Donald V. Ferlise

Submitted Under Third Circuit LAR 34.1(a)
May 9, 2006

Before: BARRY, SMITH and ALDISERT, Circuit Judges

( Filed: June 1, 2006 )

OPINION

BARRY, <u>Circuit Judge</u>

## I.

Guan Yu Lin, a native of China, entered the United States on May 4, 1994, and later applied for asylum. The asylum office referred his application to an IJ, and on February 26, 1997, while his asylum application was still pending, Lin was charged with being deportable for entering the country without inspection.

Later that year, Lin married a United States citizen, and subsequently filed an adjustment of status application. At his hearing on May 14, 2001, Lin conceded deportability, requested an adjustment of status, and, alternatively, claimed he was entitled to asylum or withholding of removal. After hearing testimony from Lin regarding his marriage, the Immigration Judge ("IJ") informed Lin's attorney, Helen Wang, Esq., that if he denied Lin an adjustment of status, she would be notified of a hearing date for Lin's asylum and withholding of removal claims.

On December 19, 2001, the IJ denied adjustment of status, citing "severe doubts due to the lack of credibility of the respondent and his wife that this indeed is a bona fide marriage." (A.R. 44.) On February 7, 2002, notice was sent to Ms. Wang setting a hearing date of May 2, 2002 on Lin's asylum and withholding claims. Neither Ms. Wang nor Lin appeared on May 2, and the IJ ordered Lin removed *in absentia* to China.

On March 14, 2003, Lin, with new counsel, Yuming Wang, Esq., filed a motion to reopen his immigration proceedings, asserting that "[n]o hearing for the respondent's

political asylum application was mentioned or scheduled by the immigration judge." (A.R. 111-12.) The IJ held a hearing on Lin's motion to reopen on May 21, 2003.

While his testimony was somewhat confusing at times,[1] Lin testified that he contacted Ms. Wang in April and May of 2002 to check on the status of his case, and that she told him to continue waiting. In March 2003, Lin retained his new attorney when Ms. Wang was not responsive to his inquiries—he "could not afford to wait any longer." (A.R. 85.) Yuming Wang informed the IJ that he filed the instant motion to reopen after discovering the December 19, 2001 order denying adjustment of status, and the May 2, 2002 order of removal *in absentia*, by calling the immigration court's "automatic answering system." (A.R. 86.)

Lin further testified that the last contact he had with Ms. Wang was the previous day—May 20, 2003—when he called her on instructions from Yuming Wang to ask about his applications. The IJ was puzzled as to why Lin would contact his former attorney after retaining a new one and having filed the motion to reopen. Yuming Wang explained that he directed Lin to call to "find out whether or not she received the Notice." (A.R. 90.)

Apparently dissatisfied with this explanation, the IJ found that Lin was "continuing in [his] lying ways," and denied the motion to reopen. (A.R. 94-95.) The IJ did not believe Lin when he said that Ms. Wang did not tell him of the May 2 hearing; and found

---

[1] Lin's testimony was translated from Mandarin to English by an interpreter via speakerphone.

the two of them "for whatever reason, chose not to appear." (A.R. 78.) Lin was immediately arrested and detained.

Lin appealed to the BIA,[2] and on June 30, 2005, the BIA dismissed the appeal. It found that Lin had received notice of the May 2 hearing. It further found that while ineffective assistance of counsel could serve as a justification for reopening the proceedings, Lin's testimony was incredible. The BIA agreed with the IJ's adverse credibility determination for two reasons. First, it stated that "respondent initially testified that he was told by his former attorney that he would have to wait, and later testified that she denied knowing him and that she 'forgot' about his case." (A.R. 3.) Second, it stated that it "share[d] the Immigration Judge's misgivings" as to why Lin would call Ms. Wang the day before his hearing to ask about his applications when he had already filed a motion to reopen. *Id.*

## II.

Lin timely filed the instant petition for review. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). *Sevoian v. Ashcroft*, 290 F.3d 166, 171 (3d Cir. 2002). To the extent that the BIA deferred in its decision to the IJ's fact finding, we will review the IJ's decision. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001). Conversely, to the

---

[2] Lin also filed a complaint against Ms. Wang with the Office of Disciplinary Counsel of the Supreme Court of Pennsylvania. On March 29, 2004, the Disciplinary Counsel found that Ms. Wang had not violated the Pennsylvania Rules of Professional Conduct. Its report said that Lin only retained her to represent him at the May 14, 2001 hearing, and that Lin chose not to hire her to "file an appeal for [him]." (A.R. 18.)

4

extent it offered its own reasoning, we will review the BIA's decision. *Id*. We will not disturb a decision unless it is "arbitrary, irrational, or contrary to law." *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004). Legal conclusions of the BIA are examined *de novo*. *Smirko v. Ashcroft*, 387 F.3d 279, 282 (3d Cir. 2004). Factual findings, including adverse credibility determinations, are reviewed under a "substantial evidence" standard, under which findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002).

**III.**

Lin argues that his motion to reopen should have been granted because Ms. Wang's ineffective assistance caused him to miss the May 2 hearing, resulting in his order of removal *in absentia*. He contends that the IJ and the BIA erred because, among other reasons, (1) their adverse credibility determinations were irrational, and (2) the IJ inappropriately relied for his credibility determination on the adjustment of status hearing two years earlier. Because we find that the BIA's adverse credibility determination is not supported by substantial evidence, we will grant the petition for review.

**A.**

"If an alien or his counsel of record has been provided with written notice of a removal proceeding, and the alien does not attend, he 'shall be ordered removed *in absentia* if the [Department of Homeland Security] establishes by clear, unequivocal, and

convincing evidence that the written notice was so provided and that the alien is removable[.]" *Borges v. Gonzales*, 402 F.3d 398, 404 (3d Cir. 2005) (second alteration in original) (quoting 8 U.S.C. § 1229a(b)(5)(A) (1952) (amended 2002)). As relevant here, an order of removal *in absentia* may be rescinded upon the granting of a motion to reopen for one of two reasons: (1) lack of notice, 8 U.S.C. § 1229a(b)(5)(C)(ii), and (2) "exceptional circumstances," *id.* § 1229a(b)(5)(C)(i). Exceptional circumstances are those "beyond the control of the alien," such as "serious illness," death of a close family member, *id*. § 1229a(e)(1), and, as we have all but held, ineffective assistance of counsel, *see Borges*, 402 F.3d at 408.[3]

Where, as here, it is clear that notice of the hearing was provided as required by the Immigration and Nationality Act ("INA"),[4] a successful motion to reopen must demonstrate exceptional circumstances. That motion must be filed within 180 days of the issuance of the order of removal. 8 U.S.C. § 1229a(b)(5)(C)(ii). Even though Lin filed his motion approximately four months late,[5] it may still be timely because, like a statute of

---

[3] In *Borges*, we stated that "we certainly see no reason not to join" other Courts of Appeals that have held that ineffective assistance of counsel qualifies as "exceptional circumstances," but concluded that "it [was] not necessary to do so at th[a]t time" because we remanded the case on the predicate issue of tolling. 402 F.3d at 408.

[4] The INA permits a notice to appear to be served on an alien by mailing the notice to his "counsel of record." 8 U.S.C. § 1229(a)(1). On February 7, 2002, a notice to appear for a hearing on May 2, 2002 was sent to Ms. Wang, then Lin's counsel of record. A certified mail receipt, albeit unsigned, also appears in the record. (A.R. 132, 263.)

[5] The order of removal issued May 2, 2002. (A.R. 131.) One hundred eighty days would have expired approximately six months later in November 2002. Lin filed

limitations, the 180 days is subject to equitable tolling. *Borges*, 402 F.3d at 406.

Grounds for tolling include a showing that a fraud perpetrated on an alien by counsel

"caus[ed] the *in absentia* order of removal to issue." *Borges*, 402 F.3d at 406-07

(attorney affirmatively told alien that case was proceeding smoothly and not to appear for

scheduled hearing). We have also suggested in dictum that broader allegations of

ineffective assistance of counsel may justify tolling. *See Mahmood v. Gonzales*, 427 F.3d

248, 251-52 & 252 n.8 (3d Cir. 2005) (attorney failed to notify alien of hearing).[6]

**B.**

Neither the IJ nor the BIA addressed in any detail whether Lin's contentions

qualified as ineffective assistance such that the 180-day limitations period could or would

be tolled; indeed, contrary to what the BIA stated in its opinion at A.R. 2, the IJ did not

even mention ineffective assistance, much less find that Lin's failure to appear had

anything to do with ineffective assistance. And while the BIA *did* find that the record

"does not reflect a clear and obvious case of ineffective assistance," it made that finding

primarily because of "the issues" related to Lin's credibility. At bottom, both the denial

of the motion to reopen and the dismissal of the appeal were based upon adverse

---

his motion to reopen on March 14, 2003. (A.R. 111-12.)

[6] Even where fraud or ineffective assistance exists, however, entitlement to equitable tolling is further conditioned upon an alien's exercise of due diligence. *Mahmood*, 427 F.3d at 252 (despite attorney's ineffective assistance, no tolling because alien took no steps to ask about status of case for 18 months, and failed to quickly hire new counsel).

credibility determinations, with the BIA endorsing what the IJ had found, and why he had found it.

An adverse credibility determination must be supported by substantial evidence. *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003) (en banc). This requires the IJ or the BIA to provide "specific, cogent reasons" for finding the alien's testimony incredible. *Id.* (quoting *Gao*, 299 F.3d at 276). "Those reasons must bear a legitimate nexus to the finding, and must be 'valid grounds' for disregarding an applicant's testimony." *Secaida-Rosales v. INS*, 331 F.3d 297, 307 (3d Cir. 2003) (internal citations omitted). Generally, deference is due to the IJ and BIA on issues of credibility, but not where their "findings and conclusions are based on inferences or presumptions that are not reasonably grounded in the record." *Id.* (quoting *El Moraghy v. Ashcroft*, 331 F.3d 195, 202 (3d Cir. 2003)).

The BIA founded its adverse credibility determination on two—possibly three—factual findings, none of which is supported by substantial evidence.

The first reason the BIA offered for finding Lin incredible is a supposed inconsistency in his testimony at the May 21, 2003 hearing. The BIA wrote, "The respondent initially testified that he was told by his former attorney that he would have to wait (Tr. at 5), and later testified that she denied knowing him and that she "forgot" about his case (Tr. at 12)." (A.R. 3.) Regardless of whether any such inconsistency can or should form the basis for a credibility determination, the problem here is that Lin never said what the BIA said he said. Yuming Wang did.

8

Even a cursory review of the hearing transcript reveals that the BIA referred to the unsworn statements of Yuming Wang in response to the IJ's questions, *not* the sworn testimony of Lin.[7] There is, therefore, no basis in the record to support the BIA's finding that Lin contradicted himself on this point.[8]

Lin's testimony regarding his May 30, 2002 call to Ms. Wang formed the second basis for the BIA's adverse credibility determination. The BIA stated that it "share[d] the Immigration Judge's misgivings as to why the respondent would choose to call his former attorney on the day before the hearing . . . [and] why . . . he [would] choose to ask her about the status of his applications and whether she had received notice for the May 2, 2002, hearing, when he had already filed his motion to reopen on March 14. [sic] 2003, and already possessed that information." (A.R. 3.)

---

[7] Yuming Wang first told the IJ that Lin called Ms. Wang on May 20, 2003 from his office and that she said, "we have to wait." (A.R. 84.) Later on in the hearing, Yuming Wang said that Ms. Wang told Lin, during that same phone call: "I don't know you – I forgot about your case." (A.R. 91.)

[8] Instead, Lin consistently testified that Ms. Wang told him to continue waiting during the April and May 2002 phone calls (A.R. 87.), and that his "case is in progress" during the May 20, 2003 phone call (A.R. 85.).

Lin testified that Yuming Wang told him to call Ms. Wang on May 30 to inquire about the results of his application for adjustment of status and application for asylum.[9] The IJ expressed his "misgivings":

> Well, that – that doesn't make any sense. That's ridiculous. Your present attorney knew as far back as March 14th that I denied the application. He just told me that. And it's evidenced by his motion to reopen, which is dated March 14th and states that I denied your application for adjustment. Why in the world would he tell you to contact another attorney to find out something he knew the answer of three months ago?
> [Lin:] I don't know.

(A.R. 89-90.) Yuming Wang then explained that he told Lin to call Ms. Wang in order to "find out whether or not she received the Notice." (A.R. 90.) The IJ then asked, "What does that matter?" *Id*.

It clearly matters, because, as explained above, there are only two grounds relevant here on which a motion to reopen to rescind an order of removal *in absentia* could potentially succeed: (1) lack of notice, and (2) "exceptional circumstances," which includes ineffective assistance of counsel. Accordingly, it surely is of importance whether Ms. Wang received the notice to appear on May 2, and it makes sense that

---

[9] Lin had difficulty expressing the purpose of his May 30 call to Ms. Wang. His answers ranged from "I asked about my status and I was told it's being purposed" (A.R. 85.), to "I was calling to confirm that if the previous attorney has produced the results, then I would not need this new attorney anymore" (A.R. 88.), to "The new attorney instructed to me to call this previous attorney to find out if other results were already produced so there's no need for further service" (A.R. 89.). The IJ then asked Lin if, when he said "results," he was referring to the result of his application to adjust status and his asylum application. Lin replied "Yes." (A.R. 89, ll. 19, 20.)

Yuming Wang, on the eve of the hearing on the motion to reopen, would tell Lin to call and ask whether she received that notice, although it would have made more sense for him to have called Ms. Wang himself. If she had not received the notice, the requisite lack of notice for reopening pursuant to 8 U.S.C. § 1229a(b)(5)(C)(ii) may have been shown. If she had received the notice and done nothing, Lin might have been able to make a case for reopening under 8 U.S.C. § 1229a(b)(5)(C)(i) on the ground of ineffective assistance.

The IJ could not understand why Lin would need to ask about the notice having already known that his applications were denied:

> You knew. . . . You knew that I had denied the application. That's what you just told me. Correct?
> [Lin's counsel:] Yes.
> [Immigration Judge:] And based on that, on March 14th, you filed a motion to reopen.
> [Lin's counsel:] Yes.
> [Immigration Judge:] So, what did you – what information could Helen Wang possibly impart on you?
> [Lin's counsel:] Whether or not she received the notice?
> [Immigration Judge:] What notice?
> [Lin's counsel:] Notice to Appear.
> [Immigration Judge:] Whether or not she received the Notice to Appear?
> [Lin's counsel:] Yeah, yeah.
> [Immigration Judge:] And what did she say?
> [Lin's counsel:] She – no, she—I was there and she said that, I don't know you – I forgot about your case.

(A.R. 90-91.)

11

Similarly, the BIA wondered why Lin would "choose to ask [Ms. Wang] about the status of his applications and whether she had received notice for the May 2, 2002, hearing, when he had already filed his motion to reopen on March 14. [sic] 2003, *and already possessed that information*." (A.R. 3 (emphasis added).)  There is nothing in the record to suggest that on March 14, 2003, Lin "possessed th[e] information" of whether Ms. Wang had received a notice to appear for the hearing on May 2.  Knowledge of the denial of the applications and the resulting order of removal *in absentia* is a very different question from knowledge of the missed hearing that resulted in that order.

Lin's reward for calling Ms. Wang at new counsel's behest was an adverse credibility determination by the BIA.  We view that call as an effort to discover why he was apparently left in the dark regarding his May 2 hearing, and are at a loss to understand how the BIA could have concluded otherwise.

Finally, in the IJ's oral decision and order, he relied in part on his conclusion that Lin lied during his May 14, 2001 adjustment of status hearing in order to find Lin not credible during the May 21, 2003 motion to reopen hearing.  The BIA's opinion, while not expressly relying upon this part of the IJ's decision, contains language that could be read as endorsing it.  The IJ's finding, however, is not supported by substantial evidence.

"[O]ne adverse credibility finding [does not] beget another." *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004).  "[A]n IJ must justify each adverse credibility finding with statements or record evidence specifically related to the issue under consideration." *Id*.

Consequently, it is error for the BIA to rely on a past, "utterly unrelated" credibility assessment in finding an alien incredible during a subsequent hearing. *Id.* In *Guo*, an IJ deemed the petitioner's testimony alleging religious persecution during her initial asylum hearing incredible. *Id*. at 562-63. The BIA relied on that finding to find that the petitioner was also not credible during a hearing on her subsequent motion to reopen, where she testified on the unrelated matter of her persecution under China's one-child policy. *Id*. We reversed.

Here, Lin's testimony regarding the legitimacy of his marriage to a United States citizen at his adjustment of status hearing is "utterly unrelated" to his testimony on his motion to reopen about why he missed his May 2 asylum hearing. Nevertheless, the IJ used the prior adverse credibility determination against Lin, and permitted the government to do so as well. At the May 21, 2003 hearing, the government attorney inquired of Lin:

> [T]he Judge essentially found after your testimony in [the May 14, 2001 adjustment of status hearing] that you were basically lying to the Court about your marriage.
> [Lin:] I did not lie.
> [Government attorney:] Well, I telling [sic] you that this is what the Judge found. . . . [I]f it's already been found that you've lied to the Court to try to get permanent residence, why should we believe that you're telling the truth today to get your case reopened?
> [Lin:] I am not lying.

(A.R. 92.)

Moments later, the IJ rendered his oral decision, which began as follows: "Mr. Lin, I've denied your motion to reopen. During our hearing for adjustment of status, I found that you lied to me. You deliberately fabricated your testimony. Listen to me. I'm speaking, don't speak. I'm afraid you're continuing in these lying ways." (A.R. 94.) Towards the end of his decision, the IJ again raised the prior hearing:

> It was pointed out by the government that this Court found that the respondent had lied during his adjustment of status hearing. It is pointed out by the Government that this Court found the respondent not to be credible and not to have presented a credible case in chief. The Court has reviewed its decision and the adjustment of status application and does find that I had found the respondent intentionally fabricated his testimony. Unfortunately, it appears that this respondent continues fabricating his testimony; continues to lie to this Court in order to obtain a benefit under the Act.

(A.R. 77.)

It certainly appears that this language influenced the BIA in coming to its own adverse credibility determination. The BIA's opinion stated that "the record does not reflect a clear and obvious case of ineffective assistance of counsel, specially [sic] considering the issues relating to the respondent's credibility that have been *further exacerbated* by the contradictory and conflicting evidence presented, *including* the respondent's testimony at the May 21, 2003, hearing, in support of his motion to reopen." (A.R. 3 (emphases added).) If Lin's credibility "issues" were "further exacerbated" by his May 21, 2003 testimony, Lin's credibility must have been in question from the outset, as far as the BIA was concerned – a "presumption of incredibility" arising out of the May

14

14, 2001 adjustment of status hearing. This violates our command that an adverse credibility determination must be supported "with statements or record evidence specifically related to the issue under consideration." *Guo*, 386 F.3d at 562. It is simply not so that "once credibility is tarnished, all successive . . . applications are irrebuttably presumed to be false." *Id.*

In sum, we find the BIA's adverse credibility determination is not supported by substantial evidence.

## C.

The government argues that regardless of credibility, Lin failed to present a case of ineffective assistance of counsel, mainly because, by failing to inform the immigration court that Ms. Wang was no longer his attorney, he allegedly contributed to his failure to receive notice. We express no opinion on the merits of Lin's claim of ineffective assistance, which is an issue for the BIA or the IJ to decide in the first instance.

## III.

When an immigration judge or the BIA rejects an asylum applicant's testimony, specific, valid, and rational reasons that "bear a legitimate nexus" to the adverse credibility determination must be given. *See Secaida-Rosales*, 331 F.3d at 307. Because the BIA failed to do so, the petition for review will be granted and the case remanded to the BIA for further proceedings consistent with this opinion.