NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1433
_____

GEZIM DODA
a/k/a GJOKE SHQUTAJ,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1:A074-955-543)
Immigration Judge: Honorable Annie Garcy

_____

Submitted Under Third Circuit LAR 34.1(a)
November 9, 2011

Before: SCIRICA, SMITH and JORDAN, *Circuit Judges*.

(Filed: November 22, 2011)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Gjoke Shqutaj[1] petitions for review of the November 22, 2010 order of the Board

of Immigration Appeals ("BIA") denying his motion to reopen his removal proceedings.

For the reasons that follow, we will deny the petition.

## I.    Background

Shqutaj is a native and citizen of Albania.  On June 6, 1996, he attempted to enter

the United States through Newark, New Jersey with an illegally obtained passport.  As a

result, he was charged with inadmissibility under 8 U.S.C.

§ 1182(a)(7)(A)(i)(I) for entering the United States with an invalid visa or entry

document, and 8 U.S.C. § 1182(a)(6)(C)(i) for presenting a fraudulent passport.  Despite

those charges, Shqutaj was paroled into the United States so that he could apply for

asylum.

In October 1996, Shqutaj filed his application for asylum.  In it, he claimed that

his father had been "arrested, convicted and sentenced to 15 years in jail because he

assisted people who had escaped from Albania and protested against the communist

government in Albania."  (A.R. at 515.)  In addition, Shqutaj claimed that he feared

persecution by the communist regime, if he were returned to Albania.  Finally, he alleged

that he also feared he would be persecuted by the Socialist Party of Albania because he

had been a member of Albania's rival Democratic Party.

---

[1] "Gezim Doda" is the name appearing first on the caption in this case, but
petitioner's application for asylum and withholding of removal, and his brief on appeal,
bear the name "Gjoke Shqutaj".  Therefore, in this Opinion, we refer to him as "Shqutaj."

On June 25, 1997, an Immigration Judge ("IJ") denied Shqutaj's application for asylum and ordered his removal. Shqutaj appealed that decision to the BIA, and on March 6, 2002, the BIA affirmed the decision and order.

On November 2, 2010, Shqutaj filed an untimely motion to reopen his removal proceedings. He argued, that the BIA should consider his untimely motion because, as a Catholic, he was in danger due to growing animosity between "Muslims, Catholics, and Orthodox religions" in Albania. (J.A. at 16.) He also argued that the tardiness of his motion should be excused due to the ineffective assistance rendered by his counsel. Finally, Shqutaj asserted that he feared persecution because he was the target of a revenge-killing resulting from a "blood feud" between his father-in-law's family and a neighbor.

The BIA decided that Shqutaj's motion to reopen was untimely because he failed to file it within the 90-day filing period prescribed by the Immigration and Nationality Act, 8 U.S.C. § 1229a(c)(7)(C)(i). The BIA also determined that none of the exceptions to the 90-day filing requirement applied to Shqutaj's motion. First, it noted that although the religious climate in Albania changed for Catholics since 1997, the religious climate "did not change in … a way that would support [Shqutaj's] claim for … asylum, withholding of removal, or protection under the Convention Against Torture," because a 2007 U.S. Department of State Report (the "2007 Report") demonstrated that Roman Catholics in Albania "enjoyed a greater degree of official recognition … and social status than some other religious groups." (J.A. at 4) (internal quotation marks omitted). Second, the BIA rejected Shqutaj's ineffective assistance of counsel claim because it

3

found that he could not prove that he suffered prejudice as a result of his attorney's allegedly deficient performance.

Turning to Shqutaj's claim of persecution as a result of a blood feud, the BIA rejected it, saying the "evidence indicate[d] that the [Albanian] government investigates and punishes blood feuds and their related crimes and that many blood feud actions have been criminalized by the Albanian Government." (*Id*. at 4.) The BIA also found that blood feuds are "essentially personal disputes that are criminal in nature" and that Shqutaj had failed to present evidence that "the Albanian government is unable or unwilling to protect its populace from such threats." (*Id*. at 5.)

Shqutaj timely petitioned for review of the BIA's decision.

## II.     Discussion[2]

The parties do not dispute that Shqutaj's motion to reopen is untimely.[3] Therefore, unless Shqutaj can demonstrate that a change in country conditions justifies reopening his removal proceedings, or that we should toll the filing deadline due to

---

[2] The BIA had jurisdiction under 8 C.F.R. § 1003.2. We have jurisdiction pursuant to 8 U.S.C. § 1252.

In immigration cases, we review the denial of a motion to reopen for abuse of discretion, regardless of the underlying basis for the alien's request for relief. *INS v. Doherty*, 502 U.S. 314, 323-24 (1992); *Ezeagwuna v. Ashcroft*, 325 F.3d 396, 409 (3d Cir. 2003). We give the BIA's decision broad deference and generally do not disturb it unless it is "arbitrary, irrational, or contrary to law." *Filja v. Gonzales*, 447 F.3d 241, 251 (3d Cir. 2006) (citation and quotation marks omitted).

[3] An alien may file a motion to reopen "within 90 days of the date of entry of a final administrative order of removal." *See* 8 U.S.C. § 1229a(c)(7)(C)(i).

4

ineffective assistance of counsel, we must conclude that the BIA correctly denied

Shqutaj's motion as untimely.[4]

A.      *Changed Country Conditions*

The 90-day time limit for filing a motion to reopen does not apply if the motion

relates to an application for asylum based on "changed country conditions arising in the

country of nationality or the country to which removal has been ordered, if such evidence

is material and was not available and would not have been discovered or presented at the

previous proceeding."  8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii).  The

alien bears the burden of proving eligibility for the requested relief.  8 C.F.R.

§ 1003.2(c)(1).

The only evidence Shqutaj offered in support of his claim of changed country

conditions is his unsupported assertion that "[s]ince 2006, there have been escalating

tensions between Muslims, Catholics and Orthodox religions," (J.A. at 16), and that

Catholics "are considered … a different people [in Albania] … and … are discriminated

[against] in every public and government place,"  (*id*. at 36).  However, the evidence of

record belies Shqutaj's assertion that conditions in Albania deteriorated for Catholics

between 1996 (the date of his original application for asylum and withholding of

removal) and 2007.  In fact, the only evidence in the record that describes the religious

---

[4] We have recognized the following exceptions to the 90-day filing requirement:
(1) motions to reopen for the purpose of applying "for asylum or withholding of
deportation based on changed country conditions," 8 C.F.R. § 1003.2(c)(3)(ii); (2)
equitable tolling due to ineffective assistance of counsel, *Mahmood v. Gonzales*, 427 F.3d
248, 251-52 (3d Cir. 2005); and (3) requests for the BIA to open removal proceedings
*sua sponte*, 8 C.F.R. § 1003.2(a).  Shqutaj invokes only the first two of those three
exceptions.

conditions in Albania, the 2007 Report, supports the government's assertion that conditions improved for Catholics in Albania during that time. In particular, the 2007 Report states that "[t]he [Albanian] constitution and law provide for freedom of religion and the government generally respect[s] this right." (*Id*. at 65.) The 2007 Report further states that "[t]he predominant religious communities, Sunni Muslim, Bektashi Muslim, Orthodox, and Roman Catholic, enjoy[] a greater degree of official recognition (for example, national holidays) and social status than some other religious groups."[5] (*Id*. at 65.) Because that evidence demonstrates that Catholics enjoyed a greater degree of freedom and respect between 1996 and 2007, we agree with the BIA's conclusion that the religious climate for Catholics in Albania "did not change in such a way that would support the applicant's claim for asylum, withholding of removal, and protection under the Convention Against Torture based solely on [Shqutaj's] asserted fear." (*Id*. at 12.) Therefore, Shqutaj failed to satisfy his burden of demonstrating a material change in country conditions.

B.    *Ineffective Assistance of Counsel*

An ineffective assistance of counsel claim can serve as a basis for equitably tolling the filing deadline for a motion to reopen a removal proceeding. *Mahmood*, 427 F.3d at 251-52 (internal citations and quotation marks omitted). In order to succeed on an ineffective assistance of counsel claim, however, a petitioner must first satisfy the

---

[5] Although the 2007 Report does not describe religious conditions in Albania between 2007 and 2010 (the year Shqutaj filed the motion to reopen), Shqutaj put forth no other evidence supporting his assertion that religious conditions deteriorated for Catholics during that period.

procedural requirements set forth in *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988).[6]

If the petitioner satisfies the *Lozada* requirements,[7] the petitioner must demonstrate that, "as a result of counsel's actions … the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Borges v. Gonzales*, 402 F.3d 398, 408 (3d Cir. 2005) (internal citations and internal quotation marks omitted). In other words, we must ask "(1) whether competent counsel would have acted otherwise, and, if yes, (2) whether the alien was prejudiced by counsel's poor performance." *Fadiga*, 488 F.3d at 157 (citations and internal quotation marks omitted).

---

[6] In *Matter of Lozada*, the BIA established the procedural requirements for filing a motion to reopen removal proceedings based on a claim of ineffective assistance of counsel. 19 I. & N. Dec. at 639. However, in *Matter of Compean* ("*Compean I*"), the Attorney General overruled *Lozada*, and introduced a new substantive and procedural framework for examining ineffective-assistance of counsel claims in immigration proceedings. *Matter of Compean*, 24 I. & N. Dec. 710 (A.G. Jan. 7, 2009). Thereafter, the Attorney General vacated "[*Compean I*] in its entirety," and instructed "the [BIA] and Immigration Judges [to] apply the *pre-Compean* standards to all pending and future motions to reopen based upon ineffective assistance of counsel, regardless of when such motions were filed." *Matter of Compean* ("*Compean II*"), 25 I. & N. Dec. 1, 3 (A.G. June 3, 2009). Therefore, the procedural requirements in *Lozada* govern Shqutaj's petition.

[7] Those requirements include:

> (1) support[ing] the claim with an affidavit attesting to the relevant facts; (2) inform[ing] former counsel of the allegations and provid[ing] counsel with the opportunity to respond (this response should be submitted with the alien's pleading asserting ineffective assistance); and (3) stat[ing] whether a complaint has been filed with appropriate disciplinary authorities regarding [the allegedly deficient] representation, and if not, why not.

*Fadiga v. Att'y Gen.*, 488 F.3d 142, 155 (3d Cir. 2007) (internal quotation marks omitted) (citing *Matter of Lozada*, 19 I. & N. Dec. at 639).

Here, even assuming *arguendo* that Shqutaj can satisfy the *Lozada* procedural requirements, his ineffective-assistance claim fails because he cannot demonstrate that he suffered prejudice as a result of his attorney's performance. It is undisputed that the BIA ordered Shqutaj's removal on March 6, 2002. However, for reasons unknown, Shqutaj did not retain counsel until 2003 – more than nine months after the statutory filing period had lapsed. (*See* J.A. at 33 ("I had hired Sokol Braho in New York to file a Motion to Reopen in 2003 after all efforts to resolve the blood feud had failed.").) Because Shqutaj's motion to reopen was already untimely when he retained counsel, he cannot argue that he was prejudiced by his attorney's failure to file the motion in a timely manner. Accordingly, we agree with the BIA's conclusion that Shqutaj failed to demonstrate "the required prejudice stemming from his former attorney's alleged behavior."[8] (*Id*. at 13.)

## III. Conclusion

For the foregoing reasons, we will deny the petition for review.

---

[8] Even assuming *arguendo* that Shqutaj's motion to reopen was timely, the BIA did not err in denying Shqutaj's motion to reopen because Shqutaj failed to demonstrate that he is eligible for asylum. In his application for asylum, Shqutaj states that he fears persecution as a result of a dispute between the Daci and Tinaj families. However, because retaliation in response to a personal dispute does not constitute persecution on the basis of a protected ground, and the dispute between the Daci and Tinaj families is a personal dispute, Shqutaj's alleged fear of persecution does not support his application for asylum. *See Amanfi v. Aschroft*, 328 F.3d 719, 727 (3d Cir. 2003) (noting that "retaliation in response to a personal dispute" is not "a ground for asylum [or] withholding of removal").