**Markeljana ZALLA, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

**Armando Zalla; Markeljana Zalla; Egi Zalla; Markez Zalla, Petitioners**

v.

**Attorney General of the United States, Respondent.**

**Nos. 06–4881, 06–4882.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 13, 2008.

Filed: April 11, 2008.

Kai W. De Graaf, New York, NY, for Petitioners.

Ari Nazarov, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondents.

Before: FUENTES, CHAGARES, and VAN ANTWERPEN, Circuit Judges.

CHAGARES, Circuit Judge.

Petitioners Armando Zalla, his wife Markeljana Zalla, and their two minor children Egi and Markez Zalla, challenge the denial of their motion to reopen by the Board of Immigration Appeals (BIA). Petitioners seek asylum, withholding of removal, and deferral of removal under the Convention Against Torture. The Immigration Judge (IJ) denied petitioners' claims, and the BIA affirmed. Petitioners moved to reopen, and the BIA denied their motions on the ground that they were filed out of time. Because the BIA did not abuse its discretion, we will deny the consolidated petitions for review of the BIA's

decisions denying the Zallas' motions to reopen.

## I.

As we write only for the parties, we do not set out the facts in great detail. The Zalla family arrived in the United States in August 1999. Mr. and Mrs. Zalla's first interview with the immigration authorities occurred at the airport. There, Mr. Zalla explained that he was a butcher from a wealthy family, and his life had been threatened by "[t]wo people [who] came to my father and wanted $50,000 or they would kill me." Appendix (App.) 648. According to Mr. Zalla, the family decided to flee Albania as a result of this incident. Mrs. Zalla echoed Mr. Zalla and stated that they had fled Albania because of the problems her husband had described.

Four days later, at his credible fear interview, Mr. Zalla again explained that he feared persecution in Albania due to his membership in a prominent, wealthy family. He reiterated the same story he had told upon arrival in the United States— that two people threatened his father, demanded $50,000, and stated that "if you don't give us the money, we will shoot your son." Id. at 664. According to Mr. Zalla, the two people "may have been gang members or Mafia." Id. Mr. Zalla explained that his father then received threatening phone calls, and shots were fired at his house. Mr. Zalla stated that "the only reason I came to the U.S. was to get away from these people.... I am worried about being shot by these people." Id. at 665.

When Mr. Zalla applied for asylum in 2000, however, he presented a different set of reasons for fleeing Albania. He claimed that "with the climbing to power of the Socialist Party" in Albania, he and his family were "victim[s] of the Socialist preasure [sic]" and persecution. Id. at 1590. Mr. Zalla stated that he had been "an important member of the Forum of Youth" and a financial supporter and member of the Democratic Party. Id. According to Mr. Zalla, he was beaten by the police, and his family was subject to machine gun fire. When Mrs. Zalla filed her asylum application in 2002, she also stated that she feared persecution by the Socialist Party due to her husband's leadership in the Youth Forum of the Democratic Party. In addition, she claimed that members of the Socialist Party had raped her, and explained that "hired gunmen" were looking for her husband. Id. at 1582–83.

After hearing testimony from the petitioners, on June 12, 2002 the IJ issued an oral decision, ordering their removal. The IJ concluded that the testimony of Mr. and Mrs. Zalla was not credible. He also determined that Mrs. Zalla's asylum application was untimely because it was filed more than one year after her arrival and she had not provided "any proof of changed or extraordinary circumstances." Id. at 175. The IJ pointed to the fact that Mr. Zalla's testimony included several incidents not described in his asylum application, and his application contained no reference to Mrs. Zalla's rape. In addition, the IJ noted that the statements that Mr. and Mrs. Zalla made to airport officials upon their arrival made no reference to any of the facts upon which their asylum applications were later based. According to the IJ, the statement taken from Mr. Zalla at the airport was "extremely damaging." Id. at 174. The IJ concluded that "this is in effect a fish tale that becomes more ornate every time it's told." Id.

On October 16, 2003, the BIA affirmed, without opinion, the IJ's decision with respect to Mr. Zalla. The BIA also affirmed the IJ's decision with respect to Mrs. Zalla and concluded that her asylum application was untimely. The Zallas filed a motion to reconsider in November 2003, which the

172

BIA denied in January 2004 on the ground that "respondents' motion simply seeks another opportunity to present their claim." *Id.* at 1622.

In September 2006, petitioners filed motions to reopen based on changed country conditions. On November 17, 2006, the BIA denied the motions on the ground that they were filed out of time, and in any event, the evidence in support of the motion was "insufficient" to show that the Zallas' were "eligible for asylum based on changed circumstances in Albania." *Id.* at 2. The BIA observed that Armando Zalla "was found not to be credible by the Immigration Judge, and we affirmed that decision." *Id.* The BIA noted that it had denied the Zallas' previous motion to reconsider because it "was simply an effort to present the same claim that had already been denied." *Id.* The BIA concluded that the motions to reopen were similarly "an attempt to shore up the [Armando Zalla's] incredible claim." *Id.* This appeal followed.

## II.

We have jurisdiction to review the BIA's decision under 8 U.S.C. § 1252. Venue is proper in this Court because the proceedings before the IJ were completed in Newark, New Jersey. 8 U.S.C. § 1252(b)(2).

This Court reviews denials of motions to reopen under an abuse of discretion standard. *See Borges v. Gonzales,* 402 F.3d 398, 404 (3d Cir.2005). We must, therefore, uphold the BIA's decision to deny a motion to reopen unless the decision is "arbitrary, irrational, or contrary to law." *Guo v. Ashcroft,* 386 F.3d 556, 562 (3d Cir.2004) (quotation marks omitted). The BIA's factual conclusions related to the motion are reviewed for substantial evidence. *Sevoian v. Ashcroft,* 290 F.3d 166, 168 (3d Cir.2002). A petitioner who seeks reversal of the BIA's findings of fact must "show that the evidence was so compelling that no reasonable factfinder could fail to find in her favor." *Barker v. Ashcroft,* 382 F.3d 313, 316 (3d Cir.2003) (quotation marks omitted). Motions to reopen raise "important finality concerns" and are generally disfavored. *Shardar v. Ashcroft,* 382 F.3d 318, 324–25 (3d Cir.2004) (quotation marks omitted). A motion to reopen "shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." *Caushi v. Att'y Gen.,* 436 F.3d 220, 231 (3d Cir.2006) (quoting 8 C.F.R. § 1003.2(c)(1)).

## III.

Motions to reopen must be filed within ninety days of the BIA's decision. 8 C.F.R. § 1003.2(c)(2). The time bar of § 1003.2(c)(2) does not apply, however, if the alien seeks to admit material evidence of "changed circumstances arising in the country of nationality or in the country to which deportation has been ordered," which "was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii).

In the instant case, the BIA entered its decision on October 16, 2003, and the motion to reopen was due ninety days thereafter. Petitioners, however, waited nearly *three years* to file their motions to reopen in September 2006. According to petitioners, "the substantial medical evidence" that revealed the impact of Mrs. Zalla's rape on the family only became available after years of psychological and medical treatment and constitutes a " 'change in [Mrs. Zalla's] circumstances that materially affect[s] [the Zallas'] eligibility for asylum.' " Petitioner Reply Br. at 3 (*quoting* 8 C.F.R. § 208.4(a)(4)(i)(B)). In addition, petitioners argue that Mr. Zalla's political

activities in the United States in support of the Albanian Democratic Party and the repercussions of his activities in Albania also constitute "changed circumstances" that warrant reopening the Zallas' case. *Id.* at 3–4. Petitioners contend therefore that the BIA erred in finding that the evidence they submitted was "insufficient" to show changed circumstances. We disagree.

Rather than challenging the BIA's decision to reject their motions to reopen, the Zallas' appeal focuses primarily on the merits of the underlying case. The BIA's decision affirming the Immigration Judge's denial of asylum, withholding of removal, and relief under the Convention Against Torture is, however, not currently before this Court. The Zallas did not file a petition for review of the final order of deportation, and any such petition would be untimely. A petition for review of a final order of removal "must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). This time period is "jurisdictional in nature and must be construed with strict fidelity to [its] terms." *Stone v. I.N.S.*, 514 U.S. 386, 405, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995). Our analysis must therefore be limited to the timeliness of the motions to reopen, not the merits of the Zallas' challenge to the underlying deportation order.

The Zallas' motions were filed almost three years late and they have not shown the changed circumstances necessary to exempt them from the ninety-day time limitation. The Government correctly observes that petitioners' motions are "essentially an attempt to explain or bolster an adverse credibility finding rendered in 2002." Respondent Br. at 12. The evidence the Zallas submitted is merely an attempt to shore-up claims that the IJ and BIA found to be incredible. Accordingly,

the BIA did not abuse its discretion in denying the Zallas' motions to reopen.

### IV.

For the foregoing reasons, we will deny the consolidated petitions for review of the BIA's decisions denying the Zallas' motions to reopen.