**Fajar Dina Atmini SUNARTO,**
**Petitioner**

v.

**ATTORNEY GENERAL OF**
**the UNITED STATES.**

**No. 07–1922.**

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) April 16, 2008.

Opinion filed April 21, 2008.

Elizabeth C. Surin, Morley, Surin & Griffin, Philadelphia, PA, for Petitioner.

Richard M. Evans, Nancy E. Friedman, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Attorney General of the United States.

Before: BARRY, SMITH and HARDIMAN, Circuit Judges.

## OPINION

PER CURIAM.

Fajar Dina Atmini Sunarto petitions for review of an order by the Board of Immigration Appeals ("BIA"). The BIA dismissed Sunarto's appeal from the decision of an Immigration Judge ("IJ") denying her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). For the following reasons, we will deny the petition.

Sunarto is a native and citizen of Indonesia. In March 2000, she entered the United States on a nonimmigrant visitor's visa and overstayed. Sunarto, a Muslim and ethnic Javanese, married another Indonesian citizen who is Chinese Christian in March 2002 in Philadelphia. She filed an asylum application in November 2003, and in January 2004 the Department of Homeland Security served her with a Notice to Appear which charged her with being removable under INA § 237(a)(1)(B).

At hearings before an IJ, Sunarto conceded removability, but claimed that her marriage to an ethnic Chinese Christian put her in jeopardy of persecution if she were to return to Indonesia. The IJ dismissed Sunarto's asylum application as time barred, and rejected her requests for withholding of removal and protection un-

der the CAT. On appeal, a single member of the BIA rejected her argument that she would be singled out for persecution or that there is a pattern or practice of persecution against native Indonesians who marry Chinese Christians, and affirmed the IJ's decision.

Sunarto now challenges the denial of withholding and relief under the CAT.[1] We review the conclusions of the BIA; to the extent that the BIA adopted the IJ's opinion, we shall review that part of the IJ's opinion as well. *See Dia v. Ashcroft,* 353 F.3d 228, 243 (3d Cir.2003) (en banc); *Gao v. Ashcroft,* 299 F.3d 266, 271 (3d Cir. 2002). Our review of the BIA's legal conclusions is de novo. *See Borges v. Gonzales,* 402 F.3d 398, 404 (3d Cir.2005). We review the factual findings under the substantial evidence standard. *Id.*

To qualify for withholding of removal, Sunarto needed to show that it is more likely than not that she would be persecuted if she returned to Indonesia. See INA § 241(b)(3); *Li Wu Lin v. INS,* 238 F.3d 239, 244 (3d Cir.2001). Sunarto maintains that the IJ and BIA erred in denying her claim because she showed a well-founded fear of future persecution. In order to do so, however, Sunarto needed to demonstrate a subjective fear of persecution through credible testimony that her fear was genuine. *See Lie v. Ashcroft,* 396 F.3d 530, 536 (3d Cir.2005). She also had to show that a reasonable person in her situation would be individually singled out for persecution or that there is a pattern or practice in Indonesia of persecution of persons similarly situated to her. *Id.*

■ The BIA found that Sunarto did not meet her burden of establishing a pattern or practice of persecution against native Indonesian Muslims who marry ethnic Chinese Christians, and rejected her arguments based upon the 2004 United States Department of State Country Report on Human Rights Practices for Indonesia. Sunarto argued that the Report reflected that persons seeking to intermarry and register marriages between different religions experienced difficulties that were in part imposed by government barriers. But Sunarto admitted at the immigration hearing that she and her husband would not encounter those problems since they have been married in a ceremony in the United States, and she further acknowledged that the Indonesian government would accept the marriage certificate from the United States. Likewise, Sunarto's use of the Report to illustrate that Indonesian Muslim extremists have recently (in 2004) perpetrated bombings and other attacks upon non-Muslims at nightclubs, cafes, churches, and in front of an embassy did not demonstrate a pattern or practice of persecution against persons similarly situated to Sunarto.

■ Further, we agree with the IJ's conclusion that Sunarto's fear of her daughter being raped by Muslims when she gets older, based upon the language of the Report discussing the problem among all women, is speculative and does not show a pattern or practice of persecution against Chinese Christians which would include Sunarto. The IJ's and BIA's conclusions here that Sunarto had not established a "systematic, pervasive,

---

1. Sunarto also raised a claim in her brief alleging that the IJ violated her rights to procedural due process because she did not make an individualized determination of Sunarto's interests. We shall not address the due process claim because it is unexhausted. *See Abdulrahman v. Ashcroft,* 330 F.3d 587, 594–

95 (3d Cir.2003). In her brief, Sunarto did not challenge the BIA's finding that her asylum application was time barred, but even if she had, we would lack jurisdiction to review that decision. *See* INA § 208(a)(3); *Tarrawally v. Ashcroft,* 338 F.3d 180, 185 (3d Cir.2003).

or organized" persecution of a group similarly situated to her is supported by substantial evidence.[2]

 In her brief on appeal, Sunarto points to several aspects of her testimony demonstrating that she is likely to be singled out because of her marriage. Specifically, she fears the reaction and treatment by her family and her neighbors because of her interfaith marriage if she were to return. However, as the IJ pointed out, Sunarto admitted in her asylum application that her family, after initially opposing the marriage, accepted her choice. The inability of her neighbors to socially accept her or her husband alone does not constitute persecution; persecution does not include "all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *See Fatin v. INS,* 12 F.3d 1233, 1240 n. 10 (3d Cir.1993). Sunarto's evidence failed to show an individualized risk of persecution or a pattern or practice of persecution, and thus she has not shown by a clear probability of the evidence that it is more likely than not she will be persecuted if removed to Indonesia. *See Li Wu Lin,* 238 F.3d at 244.

 Finally, the BIA's conclusion that Sunarto did not qualify for relief under the CAT is supported by substantial evidence. Sunarto had to show that it is more likely than not that she would be tortured if she were returned to her country. *See* 8 C.F.R. § 1208.16(c)(2). To qualify, the torture must be instigated with the consent or the acquiescence of a public official or person who is acting in an official capacity. *See* 8 C.F.R. § 208.18(a)(1). Sunarto argues that violence against Chinese Christians puts her at risk of future torture. But "reports of generalized brutality within a country" are simply not enough to

qualify. *Zubeda v. Ashcroft,* 333 F.3d 463, 478 (3d Cir.2003). Sunarto did not meet her burden here.

We will deny the petition for review.

---

2. Sunarto's husband is Protestant. Notably, the Report reflects that Protestantism, along with Islam, is one of the five major faiths recognized in Indonesia. The Report also states that "[i]nstances of discrimination and harassment of ethnic Chinese Indonesians declined compared with previous years." (A.R. 96.)