NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 14-3146 & 14-4482
_____

HAZEM SALAH FARES SIAM,
                                             Petitioner
v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                             Respondent
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1:A078-827-478)
Immigration Judge:  Annie S. Garcy
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 7, 2015

Before:  FUENTES, SLOVITER, and ROTH, *Circuit Judges*.

(Filed: September 16, 2015)

_____

OPINION*

_____

SLOVITER, *Circuit Judge*.

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Appellant, Hazem Salah Fares Siam, is a stateless Palestinian born in Gaza, and claims he and his family are members of the Fatah political party. He arrived in the United States on a visitor visa in 1999. That visa expired in 1999, but Siam remains in the country today. The applicable government agency (first the INS and thereafter the DHS) has twice initiated removal proceedings against Siam—in 2004 and 2008. In both instances, Siam petitioned for asylum to avoid removal. In 2004, Siam claimed he feared persecution by the Israelis; in 2008 he claimed he also feared persecution by Hamas, which had recently taken power in Gaza and begun perpetrating acts of violence against Fatah members. The 2004 removal proceedings were terminated without prejudice by agreement of the parties in 2007; the 2008 removal proceedings and the petition for asylum Siam filed in response are at issue in this appeal.

An immigration judge ("IJ") denied Siam's 2008 petition for asylum, making an adverse credibility determination against Siam, and faulting Siam for failing to provide corroborative evidence for his claims. Such evidence, the IJ found, would be required by both the REAL ID Act of 2005, 8 U.S.C. § 1158(b)(1)(B)(ii) ("REAL ID Act") and by prior-existing law. The Board of Immigration Appeals ("BIA") affirmed, holding that the REAL ID Act applies to this case. Siam petitions for review, arguing that he filed his original asylum petition in 2004, before the REAL ID Act took effect. Siam also argues that we should reverse the IJ and BIA's negative credibility finding. Siam also moved the BIA to reopen proceedings on July 24, 2014; the BIA denied his motion, and Siam petitions for review of that denial. We will deny Siam's petitions for review.

I.

Siam arrived in the United States on a visitor visa on May 7, 1999, with permission to stay until November 6, 1999. He overstayed his visa and attempted to gain lawful permanent resident status by marrying a U.S. citizen, Soraida Ortiz, in August of 2000. Ortiz filed a Form I-130 (petition for alien relative) on Siam's behalf in 2001. Siam last lawfully entered the United States on or about July 22, 2001, upon returning from a trip to Canada, to resume his application for adjustment of status based on his marriage to Ortiz. His immigration parole upon reentry was authorized until July 21, 2002. On January 4, 2002, Ortiz withdrew the visa petition through a sworn statement to the INS, stating that she married Siam solely to help him get his green card in exchange for Siam's promise to pay her $6,000 and transfer title of his car to her. The couple ultimately divorced.

On January 27, 2004, the INS initiated removal proceedings against Siam by sending him a Notice to Appear ("NTA"); the INS revised the NTA on November 1, 2004. Siam filed a defensive asylum petition in response, claiming that he feared arbitrary arrest, physical harm, or torture by the Israelis if he were to return to Gaza. The DHS moved to terminate the removal proceedings, and an IJ ordered that those proceedings be terminated without prejudice by agreement of the parties on October 16, 2007.

DHS reinstituted removal proceedings by filing a new NTA on March 5, 2008. The NTA alleged that Siam married Ortiz "for the purpose of evading immigration laws," that Siam was paroled into the United States on or about July 22, 2001, that his parole

was authorized until July 21, 2002, and that his application for adjustment of status was withdrawn on or about January 4, 2002. App. at 709. The NTA charged Siam with being inadmissible under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") as

> an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

*Id.* Siam conceded the allegations in this charge. The NTA also charged that Siam was inadmissible under § 212(a)(6)(C)(i) of the INA as "an alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission to the United States or other benefit provided under this chapter." *Id.* Siam contested this charge, which related to his allegedly fraudulent marriage to Ortiz.

In response to the 2008 NTA, Siam filed a second petition for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT") with the immigration court. In the 2008 asylum petition, Siam repeated his prior statement that he feared persecution from Israeli authorities were he to return to Gaza. He added that his fear was based not only on his ethnicity and religion, but also on his "membership or association with the Palestinian Authority and more specifically the Fatah, the political wing of the PA." App. at 670. He stated,

4

> In addition to fearing the Israeli authorities if I return to Gaza, I now also greatly fear Hamas militants that have taken control of Gaza from the Fatah Palestinian Authority wing. Hamas was elected as the political representative in Palestine about two years ago. Earlier this year, they forcibly took Gaza from the Fatah wing of the Palestinian Authority. They began killing and detaining and torturing and beating up Fatah members. For example, my neighbor in Gaza was shot several times in the leg because he worked for the Palestinian Authority. Many other members of the PA Fatah wing were also tortured and shot. For example, in my family many people worked for Fatah including myself when I worked as Yasser Arafat's security detail in Gaza. My cousin, Nahed Siam and my brother, Al Jamal Siam, my father, Salah Siam, all worked for the Palestinian Authority before. Now they do not work for the PA because if they assume their jobs they will get killed. In fact, they have keep [sic] a low profile and are under constant threat of being killed due to their past association with the Fatah wing.

App. at 670.

On November 23, 2010, an IJ held a merits hearing on Siam's removal. In support of his petition for asylum, Siam had submitted documentation including a three-page affidavit dated July 8, 2008. At the hearing, Siam testified that since Hamas took control in Gaza, his father and brother, who were employed as police officers for the Palestinian Liberation Organization ("PLO") or Palestinian Authority, had been arrested several times, and Hamas had threatened to blow up his family's house. He also testified that three of his cousins were killed by Hamas. On cross examination, the Government pointed out that Siam had not mentioned the threat of his house being blown up or his cousins being killed in his 2008 affidavit.

Although Siam had submitted some documentation with his petition for asylum, the IJ questioned Siam's lack of corroborative evidence for his employment with Fatah.

5

At the end of the November 23, 2010 hearing, Siam sought an adjournment to attempt to obtain additional documentation of his employment with the Palestinian Authority and the threats of violence his family had suffered at the hands of Hamas. The court granted the adjournment over the Government's objection.

Following the November 23, 2010 hearing, Siam submitted additional documentation in support of his asylum claim. All of the additional documentation related to Siam's family members' employment and identification, rather than to Siam's own employment with the Palestinian Authority. On March 9, 2011, the parties appeared again before the IJ to admit the additional documentation into evidence.

On September 28, 2011, the IJ denied Siam's application for asylum, withholding of removal and protection under the CAT. The IJ found that Siam had not been persecuted in the past, and instead his asylum petition relied solely on his fear of future persecution. Further, the IJ made an adverse credibility determination about Siam's testimony regarding his feared persecution by Hamas. The IJ expressed skepticism that Siam would be associated with Fatah were he to return to Gaza, since he had not been there since 1998. Despite being represented by counsel and having been given an opportunity to correct or supplement the record, the IJ noted that Siam's testimony at his removal proceedings was inconsistent with the written asylum petition and his affidavit in support of it. The IJ also noted several internal inconsistencies with Siam's testimony. She further took into account Siam's fraudulent marriage to Ortiz, and concluded that Siam was not credible.

6

The IJ also determined that Siam had not presented sufficient evidence to corroborate his employment with the PLO or Fatah, to prove the killings of relatives or efforts to bomb his family's house, or to prove that he could not obtain such evidence due to dangers associated with sending mail out of Gaza. The IJ noted that even before the REAL ID Act was passed, the BIA required evidence to corroborate certain facts, or an explanation of why such evidence could not be obtained. And, the IJ stated that the INA, as amended by the REAL ID Act, requires corroboration.

The BIA affirmed, stating that the REAL ID Act applies to this case because the removal proceedings and asylum application at issue were filed in 2008, after the REAL ID Act took effect. Siam appeals both the finding that the REAL ID Act applies (and attendant finding that his failure to supply corroborative evidence defeats his claim for asylum), and the adverse credibility determination.

On July 24, 2014, Siam moved the BIA to reopen removal proceedings based on changed circumstances in Gaza—namely, Israeli attacks in Gaza against ethnic Palestinians. On October 28, 2014, the BIA denied the motion, stating, "War in Gaza affects the population generally, and the motion offers no evidence that [Siam] will be targeted for persecution. It is well-settled, and the Board has recently reaffirmed, that individuals fleeing from war or a generalized state of violence are not refugees." Supp. App. Vol. II at 3 (citations omitted).

7

A.    Adverse credibility determination

The IJ found that Siam was not credible due to inconsistencies between his testimony and his asylum application, internal inconsistencies in his testimony, and his marriage to Ortiz for purposes of obtaining a green card. "We review adverse credibility determinations for substantial evidence." *Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004) (citation omitted). "Under this deferential standard of review, we must uphold the credibility determination of the BIA or IJ unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

Upon review of the administrative record, the IJ correctly noted several inconsistencies between Siam's petition and his oral testimony. Siam was questioned about these inconsistencies on cross examination, and given a chance to supplement the record following the hearing. It also appears that Siam previously attempted to gain lawful status through his fraudulent marriage to Ortiz. Therefore, we cannot say that "any reasonable adjudicator would be compelled to conclude" that Siam was credible— the facts the IJ found are sufficient to support an adverse credibility determination. Therefore, we will not reverse the IJ and BIA's denial of Siam's asylum petition on this ground.

---

[1]    The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(b)(2).

B.    Applicability of the REAL ID Act of 2005

We agree with the BIA that the REAL ID Act applies to this case.  The REAL ID

Act became effective on May 11, 2005.  *Yuan v. Att'y Gen.*, 642 F.3d 420, 424 n.6 (3d

Cir. 2011).  The 2004 removal proceedings were voluntarily dismissed by agreement of

the parties.  The removal proceedings and asylum application at issue here were filed in

2008.  Siam provides no authority for treating the 2004 and 2008 proceedings as one

continuous proceeding—indeed, he voluntarily agreed to dismissal of the 2004

proceedings, and asserted new grounds for asylum in his 2008 petition.  Therefore, the

2005 amendments to the INA contained in the REAL ID Act apply.[2]

Applying the INA as amended by the REAL ID Act, we will affirm the IJ and

BIA's determination about Siam's failure to provide corroborating evidence.  To be

---

[2]    We also note that the IJ correctly determined that even under pre-REAL ID Act law, an asylum applicant could be required to provide certain corroborative evidence, or an explanation of why such evidence was unavailable.  Before the REAL ID Act (as now), the burden of establishing eligibility for asylum lay with the applicant.  *Mulanga v. Ashcroft*, 349 F.3d 123, 133 (3d Cir. 2003).  In *Mulanga*, we stated, "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration.  However . . . otherwise-credible applicants may be required, under certain circumstances, to provide corroborating evidence to meet their burden of proof."  *Id.* (internal quotation marks and citations omitted).  To determine whether corroboration was necessary, we set out a three-part inquiry:  "(1) an identification of facts for which 'it is reasonable to expect corroboration,' (2) an inquiry as to whether the applicant has provided information corroborating those facts; and, if he or she has not, (3) an analysis of whether an applicant has adequately explained why s/he was unable to do so."  *Id.* (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001)).  Here, the IJ determined that Siam was not credible.  The IJ further put Siam on notice of her concern that his asylum petition lacked sufficient evidence and gave him the opportunity to obtain additional evidence of his employment with the Palestinian Authority or threats of violence against his family, or explain why he could not.  Siam failed to do so.  Therefore, even under pre-REAL ID Act law, the IJ was justified in denying Siam's asylum petition.

9

eligible for asylum under the INA, 8 U.S.C. § 1158(b), an alien must establish that s/he is a "refugee" as defined by the statute, meaning, as applicable here,

> any person who . . . is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. §§ 1101(a)(42), 1158(b). The applicant bears the burden of proving that s/he is a refugee as defined in the INA. 8 U.S.C. § 1158(b)(1)(B)(i). "The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). "Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id*.

"No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4). Here, the IJ gave Siam additional time to get corroborating evidence about his employment and violence (or threats of violence) against his family, or confirmation that such evidence was unavailable. Siam neither procured the additional evidence nor supplied an explanation as to why he could not do so. We are not

10

"compelled to conclude" that the corroborating evidence the IJ sought was unavailable. Thus, we affirm the BIA and IJ in denying Siam's petition on sufficiency of evidence grounds.

C.    Motion to reopen

We review the BIA's denial of Siam's motion to reopen removal proceedings for abuse of discretion, and disturb the decision only if it is "arbitrary, irrational, or contrary to law." *Borges v. Gonzales*, 402 F.3d 398, 404 (3d Cir. 2005) (citation omitted).  As the BIA correctly noted, refugee law "does not cover those fleeing from . . . civil strife, or war." *Matter of M-E-V-G-*, 26 I&N Dec. 227, 235 (BIA 2014).  The BIA's statement that "War in Gaza affects the population generally, and the motion offers no evidence that [Siam] will be targeted for persecution" is not arbitrary, irrational, or contrary to law. Supp. App. Vol. II at 3.  Therefore, we will affirm the BIA's denial of Siam's motion to reopen.

III.

For the foregoing reasons, we will deny Siam's petitions for review.

11